# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROWLAND ROBERTS and BENJAMIN G. GREVERA,<br><br>  Plaintiffs,<br><br>  v.<br><br>LUZERNE COUNTY COMMISSIONERS, et al.,<br><br>  Defendants. | CIVIL ACTION NO. 3:05-cv-2634<br><br>(JUDGE CAPUTO) |

## MEMORANDUM

Presently before the Court is Defendants' Motion to Dismiss (Doc. 7) the Plaintiffs' Complaint (Doc. 1-1) pursuant to Federal Rule of Civil Procedure 12(b)(6). For reasons set forth below, the Court will grant this motion. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331[1] ("federal question jurisdiction") and 28 U.S.C. § 1343 (original jurisdiction lies in district court based on claims under 42 U.S.C. § 1985). Because the federal claims will be dismissed, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state-law claims pursuant to 28 U.S.C. § 1367.

## BACKGROUND

The following is alleged in the Complaint: (Doc. 1-1.) Defendants Gregory Skrepenak and Todd Vonderheid are members of the Democratic Party and the majority County Commissioners of Luzerne County, Pennsylvania. Defendant Steven A. Urban is

---

[1] "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331 (1996).

a member of the Republican Party and the minority County Commissioner of Luzerne County. All three were elected to the County Commission in November of 2003 and took office on January 20, 2004. (Doc. 1-1 ¶¶ 7-8.)

In the fall of 2003, Plaintiffs were forewarned by Dr. Thomas A. Kowalski, then President of Defendant Luzerne County Prison Board (the "Prison Board"), that if the Democratic candidates were elected to the Commission, "both they [Plaintiffs] and their jobs would be out the door ASAP." (Doc. 1-1 ¶ 9.) Plaintiffs had been hired as wardens at the Luzerne County prison by Defendant Luzerne County Commissioners, and were under the supervision of the Prison Board. Both Plaintiffs had been hired on February 13, 1994, and were dismissed from their positions on January 27, 2004. (Doc. 1-1 ¶ 10.) Plaintiffs claim that prior to their dismissals they had never been criticized or reprimanded for any failure to perform their specific duties. (Doc. 1-1 ¶ 11.)

Plaintiff Roberts was replaced as assistant warden by a younger man, Samuel Hyder, who was a business partner and associate of Defendant Skrepenak. Plaintiff Grevera was replaced as a deputy warden by a younger individual, whom had actively campaigned for Defendants Skrepenak and Vonderheid. (Doc. 1-1 ¶¶ 11, 13.)

Defendant Skrepenak and Samuel Hyder toured and met at the prison several times between December 2003 and January 2004 to discuss a plan to dismiss Plantiffs from their positions. Plaintiff Roberts received numerous phone calls at the prison asking for Mr. Hyder, prior to Defendant Commissioners formally taking office and the installation of Mr. Hyder as Plaintiff Roberts' replacement. (Doc. 1-1 ¶¶ 14 I-II.) In December of 2003, Defendants Hyder, Skrepenak, Fischi, and Vanderheid told Dr. Kowalski that he could remain as president of the Prison Board if he moved for the resignation or

2

dismissal of Plaintiffs Roberts and Grevera.  Dr. Kowalski refused, and was removed from his position by the new majority Commissioners.  (Doc. 1-1 ¶ 14 III.)

In February of 2004, Plaintiffs were notified that they could reapply for their former positions, and both did reapply.  While Plaintiff Roberts was not granted an interview because he was going to be away on vacation, Plaintiff Grevera was; however, neither was rehired.  The Plaintiffs allege that these offers to reapply were nothing but a sham to cover up the fraud that had already taken place.  (Doc. 1-1 ¶ 14 XV.)

As a result of their discharge, Plaintiffs lost medical insurance, life insurance, pension benefits, accrued and future personal- and sick-leave days, and a retirement bonus, and received diminished Social Security benefits.  (Doc. 1-1 ¶¶ 14 VI-XI.)  Plaintiffs further allege that they were depicted in the media as having been dismissed for incompetence that may have contributed to an escape from the Luzerne County Jail. (Doc. 1-1 ¶ 14 XIII.)

On December 20, 2005, Plaintiffs filed their Complaint (Doc. 1-1) alleging seven counts, as follow: (1) violation of the right of association guaranteed by the First and Fourteenth Amendments to the U.S. Constitution in violation of 42 U.S.C. § 1983 based on termination of Plaintiffs due to their political viewpoints by state-actor Defendants; (2) violation of the right to free speech guaranteed under Article 1, Section 7 of the Pennsylvania Constitution and protected by the First and Fourteenth Amendments to the United States Constitution; (3) violation of Plaintiffs' right of assembly guaranteed by Article 1, Section 20 of the Pennsylvania Constitution; (4) violation of Plaintiffs' civil rights guaranteed by Article 1, Section 26 of the Pennsylvania Constitution; (5) wrongful discharge and retaliatory discharge based on Plaintiffs' voiced complaints about

deficiencies in the prison security system which ultimately led to a prison break; (6) civil conspiracy under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.*; and (7) infliction of emotional distress upon Plaintiffs as a result of their discharge.  On February 15, 2006, Defendants filed the present Motion to Dismiss Plaintiffs' Complaint.  (Doc. 7.)  This motion is fully briefed and ripe for disposition.

## **LEGAL STANDARD**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted.  Dismissal is appropriate only if, accepting all factual allegations in the complaint as true and "drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations in the complaint."  *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.,* 140 F.3d 478, 483 (3d Cir. 1998).

In deciding a motion to dismiss, the Court should consider the allegations in the complaint, exhibits attached to the complaint and matters of public record.  *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).  The Court may also consider "undisputedly authentic" documents where the plaintiff's claims are based on the documents and the defendant has attached a copy of the document to the motion to dismiss.  *Id.*  The Court need not assume that the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 263 (3d Cir. 1998), nor credit a complaint's "bald assertions" or "legal conclusions."  *Morse v. Lower Marion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997).

When considering a Rule 12(b)(6) motion, the Court's role is limited to determining

whether the plaintiff is entitled to offer evidence in support of the claims. *See Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974). The Court does not consider whether the plaintiff will ultimately prevail. *See id.* In order to survive a motion to dismiss, the plaintiff must set forth information from which each element of a claim may be inferred. *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). The defendant bears the burden of establishing that the plaintiff's complaint fails to state a claim upon which relief can be granted. *See Gould Elecs. v. United States,* 220 F.3d 169, 178 (3d Cir. 2000).

## DISCUSSION

Plaintiffs' put forth the follow claims in their Complaint (Doc. 1-1):

**Count I**: Defendants violated Plaintiffs' rights of association guaranteed by the First and Fourteenth Amendments to the United States Constitution in violation of 42 U.S.C. § 1983. Termination of Plaintiffs was performed under the direction of Defendants acting in their official capacity and under color of law, due to Plaintiffs' political opinions and their support for opposition candidates. (Doc. 1-1 Count I.)

**Count II**: Defendants violated Plaintiffs' freedom of speech guaranteed under Article 1, § 7 of the Pennsylvania Constitution and the First and Fourteenth Amendments to the United States Constitution in violation of 42 U.S.C. § 1983. Termination of Defendants was a result of their political convictions. (Doc. 1-1 Count II.)

**Count III**: Defendants violated Plaintiffs' rights of assembly guaranteed by Article 1, § 20 of the Pennsylvania Constitution. Termination of Defendants was a result of their political convictions. (Doc. 1-1 Count III.)

**Count IV**: Defendants violated Plaintiffs' civil rights and discriminated against Plaintiffs and their ability to exercise their civil rights in violation of Article 1, § 26 of the Pennsylvania Constitution. Termination of Defendants was a result of their political convictions. (Doc. 1-1 Count IV.)

**Count VI**:[2] Defendants wrongfully and retaliatorily discharged Plaintiffs in violation of the Pennsylvania Whistleblower Law. 43 P.S. §§ 1421-1428. Plaintiffs had voiced

---

[2] Plaintiffs misnumbered their claims and failed to include a 'Count V'.

5

complained to Warden Fischi about deficiencies in the prison security system.  The Warden's failure to heed these warnings resulted in a break-out occurring from the Luzerne County Jail.  Defendant Fischi then proceeded to blame the break-out on Plaintiffs.  (Doc. 1-1 Count VI.)

**Count VII**: Defendants' actions against Plaintiffs constituted a civil conspiracy under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961 *et seq*.  Defendants, acting in concert and conspiring with each other, planned to replace Plaintiffs for political and retaliatory reasons.  As a result, Plaintiffs were terminated shortly after the County Commissioner Defendants and the Prison Board Defendants took office.  This conspiracy led Plaintiffs to a forced early retirement, substantial pecuniary damages, and a loss of economic benefits.  (Doc. 1-1 Count VII.)

**Count VIII**: Defendants intentionally inflicted emotional distress upon the Plaintiffs by dismissing them from their positions.  As a result of this dismissal, Plaintiffs were disgraced and suffered significant emotional distress.  (Doc. 1-1 Count VIII.)

Plaintiffs' Count I states that the actions taken by Defendants against Plaintiffs were performed in their official capacities.  (Doc.  1-1 ¶ 16.)  The United States Supreme Court has stated that official-capacity suits "'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690, n.55).  "Suits against state officials in their official capacity therefore should be treated as suits against the State." *Id.* at 166.  The Third Circuit Court of Appeals has reiterated these principles recently in the case of *Garden State Elec. Inspection Servs. Inc. v. Levin*, 144 Fed.Appx. 247 (3d Cir. 2005).

The Court necessarily interprets all of Plaintiffs' claims to be made against the individual Defendants in their official capacities only.  The Third Circuit Court of Appeals has made it clear that in determining whether a plaintiff has sued a state actor in their official capacity, personal capacity, or both, "we look at the complaints and the "course of proceedings" to determine the nature of the liability [plaintiff] sough to impose." *Levin*,

6

144 Fed.Appx. at 251.  Plaintiffs expressly state in Count I that their termination was a result of Defendants' actions in their official capacities.  (Doc.  1-1 ¶ 16.)  Plaintiffs then proceed to incorporate that statement in all subsequent Counts.  (Doc.  1-1 ¶¶ 17, 19, 21, 23, 26, and 28.)  There is no indication–explicit or implicit–in the complaint that claims are being made against individual Defendants in their personal capacity.  Further, Defendants in no portion of their brief raise a qualified immunity defense (which is available only when government officials are sued in their personal capacity).  This affirmative defense–if raised–would represent an acknowledgment by defendants of a claim against officials in their individual capacity in the situation where plaintiffs' brief failed to state in which capacity a defendant was being sued.  *Melo v. Hafer*, 912 F.2d 628, 636 (3d Cir. 1990), *aff'd* 502 U.S. 21 (1991).  For the above reasons, the Court concludes that the only Defendants properly named in this action are the Luzerne County Commissioners and the Luzerne County Prison Board.

The Supreme Court has stated that–while establishing personal liability in a Section 1983 action requires that an official, acting under color of state law, caused the deprivation of a federal right–an action against a government entity or individual in his or her official capacity requires that the entity itself is "a 'moving force' behind the deprivation." *Graham*, 473 U.S. at 166 (citing *Polk County v. Dodson*, 454 U.S. 312, 326 (1981)).  Thus, "the entity's 'policy or custom' must have played a part in the violation of federal law." *Graham*, 473 U.S. at 166 (quoting *Monell*, 436 U.S. at 694).  Plaintiffs have made no allegations in their complaint which would support the existence of any policy or custom of the Luzerne County Commissioners or the Luzerne County Prison Board to deprive individuals of constitutionally protected rights, nor could any such policy or

custom be inferred from the allegations made by Plaintiffs.

As for Plaintiffs' civil conspiracy claim under the RICO Act, the United States Court of Appeals for the Third Circuit has held that such a claim may not be brought against a municipality absent Congress' declaration to the contrary.[3]  Additionally, Plaintiffs' complaint does not allege any act by Defendants consistent with the definition(s) of racketeering activity found in 18 U.S.C. § 1961(1), which is required to establish a cause of action under the RICO Act.

The Court finds that Plaintiffs have failed to state a claim upon which relief can be granted, pursuant to FED.R.CIV.P. 12(b)(6).  Therefore, Plaintiffs' claims based on federal law, contained in Counts I, II, and VII, will be dismissed with prejudice.

Further, the Court will decline to exercise supplemental jurisdiction over the Plaintiffs' state-law claims.  28 U.S.C. § 1367(c) states that "the district courts may decline to exercise supplemental jurisdiction over a claim ... if the district court has dismissed all claims over which it has original jurisdiction").  *See also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) (stating that "if the federal claims are dismissed before trial ... the state claims should be dismissed as well.")  Accordingly, the Court will dismiss Plaintiffs' claims based on state law, contained in Counts II, III, IV, VI, and VIII, without prejudice to those claims being filed in the appropriate state court.

---

[3] A civil claim brought under Section 1964(c) of the RICO Act carries a mandatory award of treble damages, which are predominately punitive in character.  An action under this section may thus not be maintained against a municipality, because Congress has expressed no intention to abrogate the long-established and salutary principle of common law prohibiting punitive damages against municipalities (which would result in punitive damages being imposed upon innocent taxpayers).  *Gentry v. Resolution Trust Corp.*, 937 F.2d 899, 914 (3d Cir. 1991).

## CONCLUSION

For the foregoing reasons, the Court will grant the Defendants' motion to dismiss. An appropriate order will follow.


Date: <u>October 10, 2006</u>           <u>/s/ A. Richard Caputo    </u>
                                         A. Richard Caputo
                                         United States District Judge

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROWLAND ROBERTS and BENJAMIN G. GREVERA,<br><br>    Plaintiffs,<br><br>            v.<br><br>LUZERNE COUNTY COMMISSIONERS, et al.,<br><br>    Defendants. | CIVIL ACTION NO. 3:05-cv-2634<br><br>(JUDGE CAPUTO) |

## ORDER

**NOW**, this  10th  day of October, 2006, **IT IS HEREBY ORDERED** that:

(1)    Defendants' Motion to Dismiss (Doc. 7) is **GRANTED**;

(2)    Counts I, II, and VII of Plaintiffs' Complaint (Doc. 1-1), as they pertain to claims under federal law, are **DISMISSED** with prejudice;

(3)    Counts II, III, IV, VI, and VIII of Plaintiffs' Complaint (Doc. 1-1), as they pertain to claims under state law, are **DISMISSED** without prejudice to those claims being filed in the appropriate state court; and

(4)    The Clerk of the Court shall mark this case **CLOSED**.


                                         /s/ A. Richard Caputo           
                                        A. Richard Caputo
                                        United States District Judge